NO. 21-1106

UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

_____

**TIFFANY LITZSINGER**,

Plaintiff-Appellant

V.

ADAMS COUNTY CORONER'S OFFICE
Defendant-Appellee.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
HONORABLE MICHAEL HEGERTY, MAGISTRATE JUDGE
D.C. NO. 20-CV-00989

_____

**DEFENDANT-APPELLEE'S RESPONSE BRIEF**

_____

Heidi Miller
County Attorney

Scott Blaha
Assistant County Attorney
Adams County Attorney's Office
4430 S. Adams County Parkway
Brighton, CO 80601

**ORAL ARGUMENT IS NOT REQUESTED**

July 9, 2021

# RULE 26.1 DISCLOSURE STATEMENT

The Adams County Coroner's Office is not required to provide a Rule 26.1 Disclosure Statement.

# TABLE OF CONTENTS

RULE 26.1 DISCLOSURE STATEMENT………………………………………...i

TABLE OF AUTHORITIES……………………………………………………….ii

PRIOR OR RELATED CASES……………………………………………………ii

CITATION CONVENTION………………………………………………………ii

STATEMENT OF THE ISSUES PRESENTED…………………………………..ii

STATEMENT OF THE CASE……………………………………………………....1

ARGUMENT SUMMARY………………………………………………………...2

ARGUMENT……………………………………………………...………………..3

I.   Issue 1, Insufficient Evidence of Pretext………....…………………...........3

      A.   Personal Internet Use as a Reason for Termination……………3

   II.   Issue 2, No Contradiction Related to Additional Reasons for Termination.......................................................................................5

A.   Additional Reasons for Termination............................................................5

B.   "Changing Reasons for Termination"...........................................................5

CONCLUSION...............................................................................................10

CERTIFICATE OF COMPLIANCE................................................................12

CERTIFICATE OF DIGITAL SUBMISSION...................................................12

CERTIFICATE OF SERVICE.........................................................................13

# TABLE OF AUTHORITIES

*Danville v. Reg'l Lab Corp.*,
292 F.3d 1246 at 1250 (10th Cir. 2002)..............................................................6, 8

*Fassbender v. Correct Care Sols.*, LLC,
890 F.3d 875 at 879 (10th Cir. 2018).......................................................................9

*Matthews v. Euronet Worldwide, Inc.*,
271 Fed. Appx. 770 at 774 (10th Cir. 2008)............................................................9

*Plotke v. White*,
405 F.3d 1092 at 1102 (10th Cir. 2005)...................................................................6

*Standard v. A.B.E.L. Servs.*
161 F.3d 1318 at 1333 (11th Cir. 1998)…...............................................................5

# PRIOR OR RELATED CASES

None.

# CITATION CONVENTION

The appendix and supplemental appendix are cited as (App. ##) and (Supp. App. ##). Audio recordings are cited as (Supp. App. Ex. U). Plaintiff-Appellant's Opening Brief is cited as (Opening Brief p. ##).

# ISSUES PRESENTED

1. Did Litzsinger present evidence of pretext sufficient to defeat summary judgment?

2. In order to raise an inference of pretext sufficient to defeat summary judgment, do the proffered reasons for termination have to contradict one another?

# STATEMENT OF THE CASE

Plaintiff-Appellant, Tiffany Litzsinger ("Litzsinger") was employed as a Death Investigator by Defendant-Appellee, the Adams County Coroner's Office ("Coroner's Office"), from January 2013 to September 16, 2018. During her employment, Litzsinger did not perform her job responsibilities satisfactorily. The Coroner's Office addressed these performance issues verbally and in writing, but never saw the sustained improvement they were hoping for.

In August, 2018, the Coroner asked to meet with Litzsinger to discuss her ongoing performance issues. Before that meeting could take place, Litzsinger took 13 days of FMLA leave. On August 30, 2018, several days after she returned to work, she met with the Coroner and was placed on probation. She stated that she understood the terms of her probation and thanked the Coroner for the opportunity.

As Litzsinger explains in her Opening Brief, "…probation is designed to give an employee a chance to correct mistakes. If she does not, that would be a reason for termination." (Opening Breif p. 27). One of the terms of her probation was that she was not to use the internet for personal reasons. Eight days after being placed on probation, she again used the internet for personal reasons. (Supp. App. Ex. AA, 403-406). This and other performance issues led to her termination.

The District Court properly granted the Coroner's Motion for Summary Judgment on Litzsinger's ADA and FMLA retaliation claims. The Court was correct in finding that the proffered reasons for Litzsinger's termination were legitimate and consistent with one another. (App. 218).

The Court found, "…the only reasonable evidence of pretext is the temporal proximity of the termination to Plaintiff's FMLA leave." (App. 219). The Court noted that, "…temporal proximity alone is insufficient to raise a genuine issue of

material fact concerning pretext. (*Id.*). "Beyond that (temporal proximity), Plaintiff is left with mere conjecture that the employer's explanation is pretext which is insufficient to defeat summary judgment. (*Id.*) (internal brackets and quotations omitted). Accordingly, the Court correctly held that Litzsinger had not shown pretext and therefore summary judgment in favor of the Coroner's Office was appropriate. (*Id.*)

## SUMMARY OF THE ARGUMENT

1. Litzsinger Failed to Show Sufficient Evidence of Pretext

The Coroner provided specific instances of performance issues, including failure to fix issues after being placed on probation, that led to Litzsinger's termination. Litzsinger has the burden of proving her claim that these reasons were pretextual and she failed to do so.

Litzsinger's excessive use of the internet for personal reasons is at the center of this case. But it is not the whole story. Other proffered reasons for termination included dereliction of duty, being consistently behind on work, failing to do examinations, fraudulent records, and retaliatory behavior. Litzsinger admitted that many of these reasons were true. (App. 82-83) All of these reasons were consistent with each other and part of the totality of the circumstances. None of the reasons were abandoned. And none of the reasons were *post-hoc* fabrications. The District Court was well justified in determining that none of the proffered reasons for termination were pretext.

2. The District Court's Analysis Regarding Contradiction was Accurate

In addition to the personal use of internet issue, the Coroner's Office has mentioned contemporaneous reasons and justifications for the termination that provide additional historical facts and expound on the circumstances leading up to the termination. Not one of those reasons contradicted any other reason. Because the court did not see any weaknesses, implausibilities, inconsistencies, or incoherencies in any of the Coroner's stated reasons for termination, the only thing left to analyze for was contradictions. The Court found no such contradictions and thus properly found that Litzsinger had not shown pretext.

## ARGUMENT

I. Issue 1: Insufficient Evidence of Pretext

    A. PERSONAL INTERNET USE AS A REASON FOR TERMINATION

Litzsinger's use of the internet for personal reasons was a problem before she took FMLA leave. It was made a term of her probation. It was given as a reason for termination at the termination meeting and the Rule 30(b)(6) deposition, and it was discussed in the Coroner's arguments to the District Court. (App. 82-83). Litzsinger suggests that she did not use the internet for personal reasons while on probation. But in the same paragraphs, and often in the same sentences, she admits to using the internet for personal reasons while on probation. (App. 142-143). She makes similar admissions in her arguments to this Court and to the trial court. (App. 127-128, 131-133; Opening Brief p. 12-13, 15, 17, 26, 28).

Litzsinger violated the Coroner's Office policy on media usage before she went on FMLA leave. A few days after her return to work from FMLA leave, she was placed on probation and given clear instruction to not use the internet for

3

personal reasons.  Shortly after being placed on probation, she again used the internet for personal reasons.  She was then terminated.

The Coroner told Litzinger that she was terminated for violating her probation by going to personal sites on the internet.  (App. 132, 143).  The Coroner's Office has consistently said that personal internet use was a reason for the termination.  (App. 132-133, 135-136, 149).  Litzsinger knew that personal internet use constituted a policy violation (App. 078).  She knew it was a term of her probation.  (App. 080).  And she has repeatedly admitted that her personal internet use continued while she was on probation.  (App. 127-128, 131-133; Opening Brief p. 12-13, 15, 17, 26, 28).

During the August 30, 2018 probation meeting, Litzinger's use of the internet for personal reasons was discussed at length.  (Supp. App. Ex. U).  The Coroner and Chief Deputy Coroner described numerous violations of this policy (Facebook, emails, dolphins, shopping, movies, etc.) (Supp. App. Ex. S.).  Litzsinger agreed that she had wrongly used the internet (she states that she agreed in order "to be subservient").  (App. 143).  By her own admission, she spent 60 to 90 minutes per shift on personal internet use.  (App. 060).

In her "Declaration of Tiffany Litzsinger," ("Declaration") she admits logging into a United Power account while on probation on behalf of her son and going to the Bennet Fire Department site.  (App. 142).  She offers clarification and excuses for her 60-to-90-minutes-per-day estimate.  (App. 142).  She recalls being put on probation because she was wasting time on the internet doing personal searches that caused her to fall behind in her report writing.  (App. 142).  She states that she understood that, as part of her probation, she was not to go on the internet for personal reasons, but then admits three instances of personal internet use while on

probation. (App. 142-143).

"She did not [go on the internet for personal reasons] except for an incident concerning her son's power outage and on one occasion when she showed her co-workers photos she had posted on a site." (Opening Brief p. 9). "Litzsinger did log into a United Power account for 5 minutes, but that was because her son was caught in a power outage that day." (Opening Brief P. 12). "She visited the Bennett Fire Department site to help her co-worker register for an IV certification as plaintiff had done for herself before." (Opening Brief P. 12). "During her probation, plaintiff went to no other personal Internet sites except to show her photos to her co-workers and to check her son's power outage." (Opening Brief P. 13).

Litzsinger admitted the same three instances of personal internet use in her argument to the District Court. (App. 125-128, 131-133). She cannot show that this reason for termination is pretextual when she admits its truth. See e.g. *Standard v. A.B.E.L. Servs.,* 161 F.3d 1318 at 1333 (11th Cir. 1998). The record clearly demonstrates that the personal-internet-use reason for termination is legitimate.

II.   Issue 2: No Contradiction Related to Additional Reasons for Termination
   A.   ADDITIONAL REASONS FOR TERMINATION

During the August 30, 2018 probation meeting, the Coroner explained that Litzsinger's unacceptable behavior and performance included dereliction of duty, fraudulent records, spending extensive time using the internet for personal reasons, being consistently behind, and not doing an examination of a body that she told the Coroner she would do. (Supp. App. Exs. S, U).

Ms. Listzsinger could show pretext by demonstrating that one or more of these reasons were weak, implausible, inconsistent, incoherent, or contradictory to the

point that a reasonable factfinder could rationally find them unworthy of credence…" See *Plotke v. White,* 405 F.3d 1092 at 1102 (10th Cir. 2005); *Danville v. Reg'l Lab Corp.*, 292 F.3d 1246 at 1250 (10th Cir. 2002). She has made no such a showing. Quite to the contrary, Litzsinger agreed that four of the five reasons on that list were true. (App. 82-83) (the examination was not referred to during the deposition).

During the Rule 30(b)(6) deposition, the Chief Deputy Coroner was asked what Litzsinger did to violate the terms of her probation. In addition to personal internet use, she mentioned retaliatory behavior:

> "So she was reported to be on the computer using it for personal use after the probation meeting. She was actually showing her colleagues some of her photos from her photography business. We also confirmed that she was using her computer for personal use after that meeting by pulling her internet history. She also, per her colleagues, was retaliating against them for speaking up with her about her behavior or being upset about her behavior. They reported that she was making comments to them about being thrown under the bus, not being responsive to them, and making it difficult for them to complete their jobs…" (App. 149).

Two things are apparent from this testimony. First, the Chief Deputy did not abandon personal internet use as the initial justification for the termination. Second, the personal internet use did not occur in a vacuum.

The Chief Deputy mentioned personal internet use first. She explained that she learned about it from Litzsinger's colleagues, and she explained how she verified it by "pulling her internet history." (*Id.*). She was describing the window of time wherein she and the Coroner had begun to realize that Litzsinger had violated the terms of her probation and would need to be terminated.

6

They learned that the personal internet use had continued. But they also learned that Litzsinger was exhibiting retaliatory behavior towards her co-workers. If an employee said to the Chief Deputy something like, "Litzsinger is on the internet again, and now she's not communicating with us and she's making it harder for us to do our jobs," it is reasonable to expect the Chief Deputy to include that information when asked about that particular window of time.

Answering truthfully and providing the newly-discovered information regarding retaliatory behavior should not be interpreted as scrambling to fabricate pretextual reasons for termination. The newly-discovered retaliatory behavior does not contradict or make implausible or incoherent the initial justification for termination. And it certainly does not make any of the proffered reasons for termination unworthy of belief.

The Coroner's Office has described the reasons for termination in different ways at different times. All of the reasons provided were believed to be true by the Coroner and her Chief Deputy, consistent with one another, supported by the record, and consistent with the personal-internet-use reason which has always been at the core of each discussion of the termination. The District Court accurately noted, "…none of [the reasons] have been contradicted by the record or are in contradiction with one another." (App. 218).

Most of the reasons are directly related to Litzsinger's excessive use of the internet for personal reasons. During the probation meeting, the Coroner stated, "…you are consistently behind, and now it becomes very apparent why. I went back to the beginning of the year, same stuff. Couple of weeks ago, same stuff. You're claiming that you're burnt out on work. Why? You spend half of your shift doing Facebook." (Supp. App. Ex. U). The Chief Deputy Coroner concurred, "The issue

7

is right there, is that you're just spending a lot of time on the internet when you shouldn't be. And that we know this is stuff you can do because we've seen you do it. But you're choosing to spend your time on the internet. And then you're not truthful on your logs." (Supp. App. Ex. U). Thus, the District Court correctly found that none of the reasons for termination were *post-hoc*. (App. 218)

If Litzsinger hadn't spent her work hours on Facebook, she could have stayed current on her report writing. If she hadn't wasted time on personal emails, she would have had time to do her share of the cases. If she hadn't indulged in personal internet searches, she would have had no reason to falsify her timecards. Her attempts at minimizing and excusing these violations have failed to show that these reasons for termination are weak, implausible, inconsistent, or contradictory to one another.

When assessing whether plaintiff has made a sufficient showing of pretext, the court considers the evidence as a whole. *Danville* 292 F.3d 1246 at 1250. Falling behind on her caseload, fraudulent timecard entries, dereliction of duty, etc, are all part of the totality of circumstances. Here, the internet use was part and parcel to the other performance issues that Litzinger admits were an issue. She admits that she was behind on her work and that her timecards were inaccurate. (App. 076-77) When considered together, the legitimacy, plausibility, and consistency of the reasons for termination are

enhanced.

The District Court thoughtfully analyzed the totality of the circumstances and all of the proffered reasons for termination. (App. 218). In so doing, it found that the proffered reasons were legitimate justification for termination. (App. 218). "…[T]here is no support for a finding of pretext if the employer does not give

inconsistent reasons, but instead merely elaborates on the initial justification for termination." *Matthews v. Euronet Worldwide, Inc.*, 271 Fed. Appx. 770 at 774 (10th Cir. 2008). So, the District Court was not wrong to look for contradiction among the proffered reasons. And the Court correctly decided that, "none of them have been contradicted by the record or are in contradiction with one another." (App. 218)

       B.    "CHANGING REASONS FOR THE TERMINATION"

Litzsinger cites *Fassbender* for the proposition that a change in the proffered reasons for termination is significant, "even though there was no contradiction between the positions." (Opening Brief p. 20, 21, 24, 27). The Fassbender case is distinguishable from the instant facts in two important ways – the sequence of events and the severity of the behaviors.

In *Fassbender*, there was evidence that a discriminatory motive existed before *Fassbender* committed the policy violation that was used to justify her termination. *Fassbender v. Correct Care Sols.*, LLC, 890 F.3d 875, 879 (10th Cir. 2018). She was still pregnant at the time of her termination. *Id*. Her employment was a mere six months. *Id.* at 878. And her one policy violation – receiving a note from an inmate, taking it home, and not reporting it until the next day – was discrete and mild. She received instruction from her employer on how to change her behavior. *Id*. at 880. Almost immediately thereafter, she demonstrated that she had learned her lesson and modified her behavior accordingly. *Id.*. But she was terminated and given inconsistent explanations for the termination. *Id.* at 881-882.

The facts in *Fassbender* could reasonably be interpreted as the employer abandoning its original explanations in favor of one they thought would be harder to assail. *Id.* at 888. Further, the employer's proffered reason(s) for termination,

9

regardless of how they were articulated, were discredited before they were even uttered because before she was fired she demonstrated that she had corrected her behavior by reporting a second note from an inmate as instructed. *Id.*

Here, Litzsinger's policy violations and deficient performance existed long before she took FMLA leave, and they continued after she returned to work. Listzinger was a long-term employee that had violated policy after policy, time after time. She received oral and written instruction from the Coroner on how to change her behavior on numerous occasions. Within days of being placed on probation and being given explicit instructions to not use the internet for personal reasons, she demonstrated that she was unwilling to modify her behavior.

Litzsinger agreed with the Coroner's statement, "There are a million reasons to terminate you." (Supp. App. Ex. U) This is, of course, hyperbole. But it demonstrates the frustration that the Coroner must have felt after spending five plus years coaching, training, counseling, reprimanding, and attempting to bring Litzsinger's performance in line with expectations only to find out that she was spending hours and hours of her work time on the internet.

With that history in place, it is perfectly reasonable for the Coroner's Office to describe the reason for termination as personal use internet in one setting, and as dereliction of duty, being behind on work, and fraudulent timecards in another setting. They are all inextricably intertwined. What matters in this case is that none of the reasons for termination are untrue, none of them are implausible, none contradict any other, and, therefore, none of them have been demonstrated to be pretextual.

## CONCLUSION

Litzsinger's own admissions have validated many of the proffered reasons for

termination. The District Court did not err in finding that she failed so show evidence of pretext sufficient to defeat summary judgment, or in finding no contradiction between any of the proffered reasons. Accordingly, the Order granting Summary Judgment is fair and just in all respects and should be affirmed.

ADAMS COUNTY ATTORNEYS OFFICE

*/s/ Scott B. Blaha*
Scott B. Blaha
4430 S. Adams County Parkway
Brighton, CO 80601
720-523-6307
sblaha@adcogov.org

Attorney for Defendant-Appellee

## CERTIFICATE OF COMPLIANCE

As required by Fed. R. App. 32(g)(1), I certify that the Response Brief of Defendant-Appellee is proportionally spaced and contains 3,465 words, according to the Microsoft Word software used in preparing the brief.

/s/ Scott Blaha
SCOTT BLAHA
Assistant County Attorney

## CERTIFICATE OF DIGITAL SUBMISSION

Counsel hereby certifies that with respect to the foregoing

1. All required privacy redactions have been made;

2. If required to file additional hard copies, that the ECF submission is an exact copy of those documents;

3. The digital submissions have been scanned for viruses with Trend Micro Antivirus on July 9, 2021 and are virus free.

I certify that the information in this form is true and correct to the best of my knowledge and belief formed after reasonable inquiry.

/s/ Scott Blaha
SCOTT BLAHA
Assistant County Attorney

CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of July, 2021, I electronically filed the foregoing **DEFENDANT-APPELLEE'S RESPONSE BRIEF** with the Clerk of the Court using the CM/ECF system which will send notification of the filing to the following email addresses:

>Robert M. Liechty
>ROBERT M LIECHTY PC
>5105 DTC Parkway, Suite 475
>Greenwood Village, Colorado 80111
>Email: rliechty@crossliechty.com

>*/s/ Scott B. Blaha*
>Scott B. Blaha
>4430 S. Adams County Parkway
>Brighton, CO 80601
>720-523-6307
>sblaha@adcogov.org
>
>Attorney for Defendant-Appellee